## IN RE BLODGETT, SUPERINTENDENT, WASHINGTON STATE PENITENTIARY, ET AL.

No. 91–716.   Decided January 13, 1992

PER CURIAM.

The Court has before it a petition from the State of Washington for a writ of mandamus to the Court of Appeals for the Ninth Circuit.   The petition seeks an order directing the

Court of Appeals to issue its decision on an appeal from the District Court's denial of a second federal habeas petition in a capital case. The appeal was argued and submitted to the Court of Appeals on June 27, 1989, and no decision has been forthcoming.

Charles Rodman Campbell was convicted of multiple murders in 1982 in the State of Washington and sentenced to death. After his conviction was affirmed on direct appeal and we denied certiorari, *Campbell* v. *Washington,* 471 U. S. 1094 (1985), his first federal habeas petition was filed in July 1985 in the United States District Court for the Western District of Washington. Proceedings in that matter were completed when we denied certiorari in November 1988. *Campbell* v. *Kincheloe,* 488 U. S. 948. No relief was granted.

In March 1989, Campbell filed a second federal habeas petition in the same District Court. The court acted with commendable dispatch, holding a hearing and issuing a written opinion denying a stay or other relief within days after the second petition was filed. On March 28, 1989, Campbell appealed to the Ninth Circuit. The Court of Appeals granted an indefinite stay of execution and set a briefing schedule. The case was argued and submitted in June 1989, but no decision was announced and the stay of execution remains in effect. The Washington attorney general sent letters to the panel in April and October 1990 inquiring about the status of the case, but neither letter was answered.

In January 1990, Campbell filed a motion to withdraw certain issues from consideration by the Ninth Circuit panel, and he renewed this motion in April. The panel took no action. In July 1990, Campbell filed his third state action for collateral relief, a personal restraint petition, with the Washington Supreme Court. In September, Campbell again moved the Court of Appeals to withdraw three issues from consideration in the case that it was still holding under submission, leaving eight others to be decided. The panel did not respond until by order of February 21, 1991, it noted

Campbell's motion to withdraw the issues, requested a report on the status of the state-court proceedings, and vacated its own submission of the case. Both Washington and Campbell responded that all of the issues pending before the Ninth Circuit had been exhausted. The State requested that the case be resubmitted, but the panel did not do so.

The Washington Supreme Court denied Campbell's third personal restraint petition on its merits on March 21, 1991. On June 10, 1991, Campbell filed a document advising the Court of Appeals panel that he desired to discharge his attorneys and proceed *pro se* and that he would file a third federal habeas petition in the District Court. At that point more than two years had passed since the Ninth Circuit had heard oral argument in the case. Almost two months later, on August 7, 1991, the panel granted the motion to relieve counsel, directed Campbell to file his third federal habeas petition by August 30, and announced its intention to wait for the District Court's ruling before taking further action. The District Court has set a briefing schedule for the third petition.

On October 25, 1991, the Washington attorney general filed the mandamus petition now before us, and on November 22, the Court of Appeals and the members of the panel filed a response. Neither the response nor the record reveals any plausible explanation or reason for the panel's delay in resolving the case from June 1989 until July 1990. The response addresses the events after Campbell's third personal restraint petition was filed in the Washington Supreme Court. The response indicates that the panel vacated submission in February 1991 because if the Washington Supreme Court had granted the state petition, the appeal before the Ninth Circuit would have become moot. It further stated that the panel desired to avoid piecemeal appeals by awaiting the decision of the District Court on the third federal habeas petition. The response noted that the Ninth Circuit has formed a Death Penalty Task Force with the objective of eliminating successive habeas petitions and that

the consolidation of the last two petitions is consistent with that objective.

The delay of over a year before the third personal restraint petition was filed in Washington state court remains unexplained and was in fact compounded by the events that followed. The orders by the Ninth Circuit to vacate submission of the case until completion of the state collateral proceeding and then to hold the case in abeyance pending filing and resolution of the third federal habeas proceeding in the District Court raise the very concerns regarding delay that were part of the rationale for this Court's decisions in *Rose* v. *Lundy*, 455 U. S. 509 (1982), and *McCleskey* v. *Zant*, 499 U. S. 467 (1991). Adherence to those decisions, and their prompt enforcement by the district courts and courts of appeals, will obviate in many cases what the Court of Appeals here seems to perceive to be the necessity for accommodating multiple filings.

As to the Death Penalty Task Force, reports of joint committees of the bench and bar should be of urgent concern to all persons with the responsibility for the administration of justice in the Ninth Circuit, but the ordinary course of legal proceedings and the constant duty of all judges to discharge their duties with diligence and precision cannot be suspended to await its recommendations.

None of the reasons offered in the response dispels our concern that the State of Washington has sustained severe prejudice by the 2½-year stay of execution. The stay has prevented Washington from exercising its sovereign power to enforce the criminal law, an interest we found of great weight in *McCleskey* when discussing the importance of finality in the context of federal habeas corpus proceedings. *Id.*, at 491. Given the potential for prejudice to the State of Washington, the Ninth Circuit was under a duty to consider Campbell's claim for relief without delay. Our case law suggests that expedited review of this second habeas petition would have been proper. *Barefoot* v. *Estelle*, 463 U. S. 880,

895 (1983) ("Even where it cannot be concluded that a [successive habeas] petition should be dismissed under Rule 9(b), it would be proper for the district court to expedite consideration of the petition"). The delay in this case demonstrates the necessity for the rule that we now make explicit. In a capital case the grant of a stay of execution directed to a State by a federal court imposes on that court the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, consistent with its duty to give full and fair consideration to all of the issues presented in the case.

Despite our continuing concerns, we decline to issue mandamus to the Court of Appeals at this time. While there are grounds to question both the necessity and the propriety of the Ninth Circuit's order of August 7, 1991, *Campbell* v. *Blodgett*, 940 F. 2d 549, the State did not file any objection to it. The State should have lodged its objection with the Court of Appeals, citing the cases it now cites to us. True, the State had taken some action. It wrote twice in 1990 to inquire about the status of the case. And after the panel's order vacating submission, the State objected and asked that the case be resubmitted for decision. The argument could be made that further requests for an expedited decision on the merits had little chance of success. But as a predicate for extraordinary relief, the State should have asked the Court of Appeals to vacate or modify its order of August 7, 1991, before coming here. This Court's Rule 20.1 ("To justify the granting of any writ under that provision, it must be shown . . . that adequate relief cannot be obtained in any other form or from any other court").

As we do not now issue a writ of mandamus, the Court of Appeals should determine how best to expedite the appeal, given the present posture of the case. Denial of the writ is without prejudice to the right of the State to again seek mandamus relief or to request any other extraordinary relief by motion or petition if unnecessary delays or unwarranted stays occur in the panel's disposition of the matter. In view

of the delay that has already occurred, any further postponements or extensions of time will be subject to a most rigorous scrutiny in this Court if the State of Washington files a further and meritorious petition for relief.

The motion of respondent Charles R. Campbell for leave to proceed *in forma pauperis* is granted. The petition for writ of mandamus is

*Denied.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, concurring in the judgment.

In recent years, the federal judiciary has done a magnificent job of handling a truly demanding appellate workload. On a national basis, the average time between notice of appeal and disposition is now less than 11 months. Although delays that are not fully justified occasionally occur, only in the most extraordinary circumstances would it be appropriate for this Court to issue a writ of mandamus to require a court of appeals to render its decision in a case under advisement.[1]

In its petition for a writ of mandamus, the State criticizes the Court of Appeals' failure to rule on the merits of Campbell's second habeas corpus petition, which was submitted in June 1989. In their response, the judges on the panel pro-

---

[1] "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr* v. *United States District Court for Northern District of Cal.,* 426 U. S. 394, 402 (1976); see also *Will* v. *United States,* 389 U. S. 90, 95 (1967); *Ex parte Fahey,* 332 U. S. 258, 259 (1947). Mandamus "has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will,* 389 U. S., at 95 (internal quotation marks omitted). Accordingly, we have required that the party seeking issuance of the writ have no other adequate means to attain the desired relief, and that he demonstrate that his "right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Casualty Co.* v. *Holland,* 346 U. S. 379, 384 (1953), quoting *United States* v. *Duell,* 172 U. S. 576, 582 (1899).

vide a completely satisfactory explanation for their July 1990 decision to defer ruling on the merits of the petition—namely, their desire to avoid piecemeal litigation and to address all of Campbell's claims in a single ruling. Because that explanation alone is sufficient to mandate denial of the State's petition, there was no occasion for the panel to explain its pre-July 1990 delay.

The panel's decision to defer its ruling on the second habeas petition pending disposition of the third personal restraint petition filed in the Washington Supreme Court in July 1990 showed proper respect for that court. Although this Court expresses its concern about the State's interest in expediting its execution of Campbell, the Court is notably silent about the fact that the Washington Supreme Court considered the claims Campbell raised in his third personal restraint petition to be substantial. Although the state court, over the dissent of Justice Utter, denied Campbell's petition, that court appointed counsel, scheduled briefing, heard oral argument, and addressed the merits of Campbell's several claims. On these facts, the Ninth Circuit's decision to delay its ruling on Campbell's second habeas petition was sound, for it enables that court to consider the entire case at one time and will not delay the ultimate disposition of the matter.[2]

Although I am sure the Court did not intend to send such a message, its opinion today may be read as an open invitation to petitions for mandamus from every State in which a federal court has stayed an execution. This is unfortunate because, as we noted in *Kerr* v. *United States District Court*

---

[2] On the facts of this case, the "severe prejudice" perceived by the Court is illusory. Even were we to direct the Ninth Circuit to decide Campbell's second petition, the State would still be required to wait until that court ruled on his third petition. The State seems to recognize as much, for it asks that we both direct the Ninth Circuit to decide the second habeas petition *and* vacate the August 7 order which permitted filing of the third habeas petition. Pet. for Writ of Mandamus 9.

*for Northern District of Cal.*, 426 U. S. 394, 403 (1976), "particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation."

Moreover, as we have so frequently recognized, mandamus is disfavored because it has "the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him." *Ex parte Fahey*, 332 U. S. 258, 260 (1947). Mandamus is an "extraordinary remed[y] reserved for really extraordinary causes," *ibid.*, precisely because of the great respect we have for our fellow jurists. This is not a situation in which the Ninth Circuit has unduly delayed decision of a case, but rather a situation in which that court has chosen to avoid repetitive and piecemeal litigation by consolidating two appeals. Respect for our fellow judges means providing them latitude in the handling of their burgeoning dockets, and granting due deference to those whose dockets are less discretionary than ours.

For the foregoing reasons, and because the State has failed to comply with this Court's Rule 20.1, I believe that the State's petition should have been denied summarily.