**Charles Rodman CAMPBELL,**
**Petitioner–Appellant,**

v.

**Tana WOOD, Superintendent, Washington State Penitentiary, Walla Walla, Washington; Christine O. Gregoire, Attorney General, State of Washington, Respondents–Appellees.**

**No. 89–35210.**

United States Court of Appeals,
Ninth Circuit.

April 15, 1994.

Before: WALLACE, Chief Judge, BROWNING, TANG, POOLE, D.W. NELSON, REINHARDT, BEEZER, WIGGINS, DAVID R. THOMPSON, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

**ORDER**

This order disposes of the various motions filed by the parties since we filed an opinion on February 8, 1994.

**I**

Campbell's petition for rehearing with suggestion for rehearing by the full court is denied. The eleven-judge en banc court voted to deny the petition for rehearing and to reject the suggestion for rehearing by the full court en banc. A vote was taken of the active judges and has failed to receive a

majority of votes in favor of full court en banc consideration. Fed.R.App.P. 35(b).

## II

 Campbell's motion for a stay of the mandate pending application to the Supreme Court for a writ of certiorari is denied. The mandate has already been delayed beyond the 21 days provided in Fed.R.App.P. 41(a). Campbell is not entitled to an automatic stay under Circuit Rule 41–1. We agree with Campbell that ordinarily a party need not demonstrate that exceptional circumstances justify a stay of the mandate. Nevertheless, we find that exceptional circumstances justify denying the stay in this case. Over two years ago, in *In re Blodgett*, —— U.S. ——, ——, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992), the Supreme Court reminded us that the delay in this particular case has prejudiced the State of Washington. We are under a duty to "ensure a prompt resolution of the matter." *Id.* Denial of a stay of the mandate does not prevent Campbell from seeking a further stay of execution in the Supreme Court.

## III

The Respondents–Appellees' motion to strike Campbell's suggestion for rehearing by the full court and to strike Campbell's pro se brief in support of petition for rehearing is denied. The Respondents–Appellees' motion to vacate the stay of execution, or in the alternative to immediately issue the mandate is moot. The Respondents–Appellees' motion for reconsideration of our Order of March 10, 1994 is also moot. This order will result in the issuance of the mandate forthwith. The Respondents–Appellees' motion for expedited consideration of Campbell's petition for rehearing and renewed motion to vacate the stay of execution is moot.

NOW therefore, it is,

ORDERED that, pursuant to Rule 35(b) of the Federal Rules of Appellate Procedure, the petition for rehearing is denied and the suggestion for rehearing by the full court is rejected. The petition for rehearing having been denied, the Clerk shall issue the mandate.

Chief Judge WALLACE and Circuit Judges BEEZER, WIGGINS, DAVID R. THOMPSON, O'SCANNLAIN and KLEINFELD concur in this order.

POOLE, Circuit Judge, dissenting from the limited en banc court's refusal to stay its mandate.

This court has a general policy against issuing the mandate forthwith (General Order 4.6) and we commonly stay our mandate pending application for a writ of certiorari without requiring any demonstration of exceptional circumstances. *See, e.g., Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir.1989). The en banc court deviates from this standard practice purportedly because of *In re Blodgett*, —— U.S. ——, 112 S.Ct. 674, 116 L.Ed.2d 669 (1994), where the Supreme Court scolded the court for delay in this case. I have not forgotten that scolding; but *In re Blodgett* did not criticize the propriety of our conduct which did not deviate from our established procedures. I read *In re Blodgett* as a warning against deviating from established procedures in capital cases, not as a direction to ignore established procedures. Because I would grant Campbell's request, as in other cases, to stay the mandate for thirty days as provided for by Fed.R.App.P. 41(b), I respectfully dissent from Part II of the en banc court's order.

D.W. NELSON, Circuit Judge, dissenting from the limited en banc court's refusal to stay its mandate:

I concur in the order of the limited en banc court with the exception of Part II, in which the court concludes that Campbell is not entitled to a stay of the issuance of its mandate pending application for a writ of certiorari in the Supreme Court. Because I believe that Campbell is entitled to such a stay pursuant to Fed.R.App.Proc. 41(b) and Circuit Rule 41–1 of this court, I dissent from this portion of the court's order.

REINHARDT, Circuit Judge, with whom Circuit Judge JAMES R. BROWNING joins, and with whom Circuit Judge TANG joins as to Part I, concurring and dissenting:

### I.

I dissent from this court's refusal to stay Campbell's execution by hanging pending his

filing of a petition for a writ of certiorari with the United States Supreme Court. Our denial of Campbell's request for a stay is in direct violation of the rules that govern the operation of this court. By our decision we pronounce our willingness to hang Campbell first and submit the serious constitutional issue he raises to the Supreme Court for decision later. So the Ninth Circuit returns, at least for now, to the rough Western justice of frontier days: Hang 'em first, ask questions later.

Our decision demonstrates once again that in capital punishment cases, the current federal judiciary is less concerned with rules of law and constitutional principles than with ensuring that defendants are executed speedily. The unprincipled and arbitrary decision-making of which Justice Blackmun recently spoke so eloquently, *see Collins v. Collins*, — U.S. —, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) (Blackmun, J., dissenting from denial of certiorari), infects not only our nation's highest court; it pervades the actions of the lower courts as well. Where the death penalty is at stake, the federal courts have lost not only their moral but their legal compass.

There can be no question about either what the majority does today or what our rules require. Campbell is entitled to a stay and the majority's refusal to grant him one is both erroneous and arbitrary. Under Supreme Court Rule 13.4, Campbell has 90 days from the date of the majority's order to file his certiorari petition. However, under Washington law, Campbell's execution will be *automatically* set for *thirty* judicial days (approximately six weeks) from today. In other words, in the absence of a stay Campbell will be dead before half of his period for seeking constitutional relief from the Supreme Court has run.

Circuit Rule 41–1 governs our decision whether to stay a mandate pending the filing of a petition for a writ of certiorari. Under that rule, unless a claim is frivolous or made merely for the purpose of delay, it is ordinarily our obligation to grant a stay. It can hardly be said that Campbell's claim that hanging constitutes cruel and unusual punishment is frivolous or made merely for the purpose of delay. Indeed, Campbell's argument is correct. Hanging *is* unconstitutional. It violates the Eighth Amendment. Even those who disagree must concede that Campbell's claim raises a substantial constitutional issue. Our 6–5 vote on this question in the limited en banc court is but one indication of this fact. Moreover, the general constitutional issue presented by this case is of vital importance: what, if any, limitations does the Eighth Amendment place on barbaric and inhumane methods of punishment?

When a party raises a substantial constitutional issue of exceptional importance, and a limited en banc court rejects it by a closely-divided vote after extensive consideration, there can be no question of our obligation under Circuit Rule 41–1 to stay our mandate. We are obligated to do so in order that the party whose rights are involved can seek Supreme Court review of our decision before that decision is implemented. Can there really be any question that we have an obligation to issue a stay when the decision to be implemented will result in the defendant's being hanged by the neck until dead? If *this* case does not warrant a stay pending certiorari, I cannot think of one that would.

The majority's order invokes *In re Blodgett*, — U.S. —, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992) (per curiam), as if the Supreme Court has required us to disregard our established rule governing the issuance of stays (Circuit Rule 41–1). The Court has done no such thing. It has directed us only "to take all steps necessary to ensure a prompt resolution of the matter, *consistent with [our] duty to give full and fair consideration to all of the issues presented in the case.*" *Id.* — U.S. at —, 112 S.Ct. at 676 (emphasis added). "[F]ull and fair consideration" of Campbell's claims *requires* that our mandate be stayed. In the absence of a judicial stay, the State of Washington is likely to hang Campbell before the Supreme Court even has an opportunity to decide whether hanging is constitutional. Today's order, refusing to exercise the authority and responsibility that is vested in us by our rules, demonstrates the majority's willingness to allow this unconscionable course of events to unfold.

I recognize that our refusal to act in accordance with law does not mean that Campbell will necessarily be executed before he can file his petition for writ of certiorari in the Supreme Court or before that Court can fully consider his constitutional claim. Justice O'Connor, our Circuit Justice, can issue a stay if she is so inclined, or the full Court can do so if five Justices vote to grant a stay. However, that should not ease the conscience of any member of this court or serve as an excuse for anyone's failure to perform his or her duty properly. We could say in any case that comes before us: "What difference does it make whether we follow the law? The Supreme Court can undo whatever we do or fail to do." No self-respecting jurist would take that position in the ordinary case. It would be even less acceptable to do so here. A court that respects the rule of law must adhere to *its* obligation and do *its* duty. In this case, that means issuing a stay to preserve the right of a condemned man to seek relief in the nation's highest court before he is executed by a means that violates or (to put it in the light most favorable to the majority) may well violate the Constitution.

## II.

I also wish to note my dissent from the refusal of our full court to hear this case en banc. The practice of judicial hanging is a savage relic of our frontier past, a method of execution that seeks to kill the condemned in a barbaric manner. It has been abandoned in every state in the United States but two—Washington and Montana, both in the Ninth Circuit. In this case, a limited en banc court considered the question whether in the year 1994 hanging constitutes cruel and unusual punishment. By a six-to-five vote, the eleven-judge court concluded, remarkably, that hanging does not violate the Constitution. In doing so, the court committed several highly significant errors, which could have effects extending far beyond the narrow but important issue of hanging. Most notably, the six-judge majority broke with Supreme Court precedent and adopted a new Eighth Amendment test for use in those cases which lie at the very core of the Cruel and Unusual Punishments Clause—cases involving challenges to methods of punishment. Until the

majority issued its opinion, every contemporary Eighth Amendment case had adhered to the Supreme Court's pronouncement that "[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion). However, according to the majority, when an individual challenges a *method of punishment,* we do not look to our society's "evolving standards" at all. Instead, we consider only whether the method causes *unnecessary pain.*

As I explained in my earlier dissent, the majority's unprecedented rule eviscerates the Eighth Amendment. It would appear that to the majority *any* method of punishment—no matter how barbaric—would be constitutional, so long as it inflicts no more pain than *necessary* to achieve the state's objective of deterrence or retribution. It is on that same rationale that Singapore has justified its practice of "caning," a practice that President Clinton has at least twice officially protested, on behalf of the government of the United States, as uncivilized. Neither the President nor the Department of Justice has yet announced whether our government considers hanging more civilized than caning. In any event, if *any* case deserves review by the full court, it is this one.

## III.

In denying a stay that would permit Campbell a full and fair opportunity to file a petition for a writ of certiorari in the Supreme Court *before* he is executed, we flagrantly violate the rules which govern this court's operations. Neither the fact that we desire speedy executions nor the fact that the Supreme Court also has the authority to grant a stay can justify our decision today. Indeed, there is simply no excuse for our refusal to perform our obligations under the law. I would grant the stay. I also dissent from our decision not to rehear this case before the full court. The majority decision of the limited en banc court has adopted an unprecedented and unacceptable interpretation of one of our most fundamental constitu-

tional protections. As a court, we have an obligation to reconsider that decision. Thus, I dissent from Section I and Section II of the limited en banc court's order.*

* I concur in Section III of the order, only insofar as it denies the state's motions as moot.