Johnny NEAL, Jr., Petitioner–Appellant,

v.

Richard B. GRAMLEY, Respondent–Appellee.

No. 96–1452.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 9, 1996.

Decided Oct. 30, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 16, 1997.

Rita M. Novak, Steven Splitt (argued), Office of Attorney General, Chicago, IL, for Respondent–Appellee.

Alan M. Freedman (argued), Bruce H. Bornstein, Carol R. Heise, Freedman & Bornstein, Chicago, IL, Patricia Mysza, Chicago, IL, for Petitioner–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

A state prisoner who is under sentence of death appeals from the denial of federal habeas corpus. One night back in 1982 Johnny Neal entered the home of a neighbor with whom he was friendly, Lillian Waid, a 63–year–old widow, robbed her, and, though she put up no resistance, bashed in her head with a length of lead pipe filled with concrete and

then stabbed her. The principal ground on which he seeks relief is that his lawyer rendered ineffective assistance of counsel at the hearing in 1983 in which a jury sentenced him to death. She did this, Neal argues, by failing to conduct a full investigation of his personal and psychiatric history and character. That history would have revealed that as a child he was severely beaten by his mother, that he was a good worker and a good neighbor (other than to Mrs. Waid, of course), and that, according to an affidavit of a clinical psychologist retained by Neal's current counsel, he killed Mrs. Waid under the illusion that she was his mother and was trying to hurt him.

 The state courts in which Neal first made this claim, in postconviction proceedings attacking his conviction and sentence, determined that his counsel had not been ineffective. The scope of our review of that determination is extremely limited. Under 28 U.S.C. § 2254(d)(1)—which was added to the law by the newly enacted Antiterrorism and Effective Death Penalty Act of 1996, § 104(3), Pub.L. 104–132, 110 Stat. 1214, 1219, and which we held in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), applies (with immaterial exceptions) to cases pending when the Act was passed—when the issue tendered to the federal court in a habeas corpus proceeding is not the meaning of the Constitution but the application of a settled principle to the facts of the case the petitioner must show that the state courts' determination was not merely incorrect, but "unreasonable." This is, of course, provided the determination was made after the petitioner had a full and fair opportunity to litigate the issue. *Id.* at 870–71. Neal argues that he was denied that opportunity. He filed two postconviction proceedings in state court, challenging the competence of his trial lawyer. The first was denied on the merits. The second sought to present additional evidence of his trial lawyer's alleged incompetence and argued that the reason the additional evidence had not been submitted in the first postconviction proceeding was that Neal's counsel in that proceeding, too, had been incompetent. The state court rejected this excuse, and turned down the petition for postconviction relief without reaching the merits. Illinois permits a second petition for postconviction relief if the first proceeding was fundamentally deficient, and inadequacy of counsel at that proceeding is one basis for deeming it fundamentally deficient. *People v. Free*, 122 Ill.2d 367, 119 Ill.Dec. 325, 329, 522 N.E.2d 1184, 1188 (1988). But the state court in the second proceeding looked at the evidence that counsel at the first postconviction proceeding had failed to introduce, decided that had it been considered it would not have demonstrated ineffective assistance by Neal's trial lawyer, and concluded that the first postconviction proceeding had not been fundamentally deficient.

 There is no federal constitutional right to counsel in a postconviction proceeding, and from this the Supreme Court has reasoned that procedural defaults due to the blunderings of such counsel are not to be excused. *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–9, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318 (1992); *Coleman v. Thompson*, 501 U.S. 722, 752–53, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991); see also *Jenkins v. Gramley*, 8 F.3d 505, 508 (7th Cir.1993). Consistent with this understanding—which the new habeas corpus statute confirms by providing explicitly that incompetence of counsel in postconviction proceedings, state or federal, is not a ground for relief in federal habeas corpus, 28 U.S.C. § 2254(i)—Neal's second state postconviction proceeding challenged the competence of his lawyer in the first postconviction proceeding on strictly state law grounds. It follows directly from the Supreme Court's rulings and the new statute that procedural defaults caused by counsel in state postconviction proceedings will not get the applicant for federal habeas corpus a more favorable standard of review or let him present evidence that a state court has held to be barred as a result of the default.

 The fact that the state court in the second round of postconviction proceedings touched on the merits of Neal's federal constitutional claim does not permit us to disregard the default. When it is unclear whether the state court's decision rests entirely on a procedural or other state law ground rather

844

than on the merits of the federal constitutional claim, the federal court can reach those merits. *Harris v. Reed*, 489 U.S. 255, 261–63, 109 S.Ct. 1038, 1042–44, 103 L.Ed.2d 308 (1989); *Rose v. Lane*, 910 F.2d 400, 402 (7th Cir.1990); *Rogers–Bey v. Lane*, 896 F.2d 279, 281–82 (7th Cir.1990). Only there is no ambiguity here. The only reason the state court discussed the merits was to determine whether the evidence that Neal's lawyer at the first postconviction proceeding had failed to introduce was so compelling that had it been introduced it would have gained Neal a new sentencing hearing by showing that his trial lawyer had been ineffective. Proof of ineffectiveness of counsel requires a demonstration of prejudice as well as of incompetence, and any inquiry into prejudice necessarily brushes the merits. Illinois like many states provides a safety valve for situations in which enforcing a procedural default would mask a plain error. *People v. Herrett*, 137 Ill.2d 195, 148 Ill.Dec. 695, 701–02, 561 N.E.2d 1, 7–8 (1990). To decide whether an error is plain requires consideration of the merits—but only so far as may be required to determine that issue. It does not open up the merits any wider for consideration by the federal court. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383–84 (7th Cir.1990); *Willis v. Aiken*, 8 F.3d 556, 566–67 (7th Cir.1993); *Russell v. Rolfs*, 893 F.2d 1033, 1040–41 (9th Cir.1990) (dissenting opinion). It is the same with the closely related Illinois rule relating to fundamental deficiencies in the postconviction process. The determination of deficiency may require a glance at the merits; it does not open up the merits to plenary consideration by the federal court.

At argument Neal's lawyer seemed to be contending that due process of law requires that the procedures employed in state postconviction proceedings be simple enough to be proof against attorney negligence. No authority for such a contention was advanced.

■ The issue of ineffective assistance of Neal's trial counsel comes to us after a full and fair hearing, and so the only question we have to answer is whether the state courts, on the basis of the evidence presented in the first postconviction proceeding, were unreasonable to conclude that Neal's trial lawyer had been competent. That evidence was meager—a couple of affidavits attesting that Neal was a good person and a good worker, but without elaboration; an affidavit from his jailer that Neal was not remembered as having been an unruly prisoner when he was in jail awaiting trial; and a police report that a cousin of Neal's had said that Neal had been abused as a child. The determination that the failure of Neal's trial counsel to present such evidence at the sentencing hearing did not establish ineffective assistance of counsel could not be thought unreasonable. It is not as if counsel had failed to submit any evidence of mitigation, as in *Emerson v. Gramley*, 91 F.3d 898 (7th Cir.1996). Neal refused to testify at the sentencing hearing and was generally uncooperative, for which he should not be rewarded at this stage. His lawyer put Neal's current wife on the stand. She testified that Neal treated her well and was employed at a Holiday Inn. The impression created through her testimony and the lawyer's argument was that Neal's criminal record before the murder was limited to a conviction for a "swindle" not further elaborated, that he had a long and steady record of employment, that he was a good family man, and (by inference from these facts) that he was a not a person of violence and that the robbery and murder of Mrs. Waid must have been a temporary aberration, for which death would be too harsh a penalty. Against this, besides the evidence of the murder and robbery, was testimony by Neal's first wife that he once punched her in the mouth, breaking the roof of her mouth and knocking her teeth out.

An affidavit from a jailer that Neal had not raised hell while awaiting trial for capital murder would not have been worth the paper it was written on, so far as appealing to a jury's rational or for that matter irrational faculty of mercy. The cousinly hearsay in the police report was worth little more. And the "good person-good worker" affidavits would have opened up Neal's past to an examination that would have created a different and worse impression than that created by his counsel and her witness, Neal's wife. According to the presentence investigation report, the accuracy of which we do not

understand Neal's present counsel to be questioning, Neal was not employed at the time of the robbery and murder, and the swindle consisted of embezzlement from a previous employer (so much for the "good worker"). As for the "good person," the report indicates that while in the army Neal had been jailed for six months for going AWOL and imprisoned for 17 months following a court-martial at which he was found guilty of breaking and entering, that he had received a bad-conduct discharge, and that he is a former alcoholic and drug abuser. Had Neal's counsel opened up his history by introducing the "good person-good worker" affidavits, that action would be the cornerstone of Neal's case for ineffective assistance of counsel.

Of course if counsel had investigated further, she might have found more—might have found, we may assume *would* have found, the history of maternal abuse on which the second postconviction petition in state court pivoted. And the first petition did fault her for having failed to conduct an adequate investigation, a common charge in these cases. But since, as we have noted already, establishing ineffective assistance requires proof of harm to the client from his lawyer's ineffectiveness, and not just ineffectiveness, the first petition could not succeed without proof of that harm. All that the later investigation came up with was the four worthless affidavits. The state court, based on what was before it, had no choice but to turn down the petition. That decision was not merely reasonable; it was correct. The more complete investigation conducted later came too late to help Neal.

But even if we set to one side *all* the procedural obstacles to Neal's claim of ineffective assistance, and consider all the evidence he wants us to consider, de novo, as if we were the court of first instance, the claim fails. His case, even taking into account all the evidence that he and his lawyers have obtained or manufactured in the past 13 years, is weaker than the parallel case that we rejected in *Stewart v. Gramley*, 74 F.3d 132, 135–37 (7th Cir.1996). There, as here, the defendant's trial counsel had presented some evidence in mitigation of Stewart's evil

conduct or character and the argument was that he should have presented more, the more being the fruits of an exhaustive investigation into Stewart's past conducted by a "mitigation specialist" hired years later. There, as here, the postconviction investigation had revealed evidence both that could have been used to mitigate Stewart's depravity and that could have been used to show that he was an even worse person than the evidence presented at the sentencing hearing had indicated. We described it as a case in which a complete investigation would "have found little or nothing that would have been likely to sway the judge in Stewart's favor and much that might have swayed him against." *Id.* at 137. That being so, Stewart had not demonstrated harm from the deficiencies of his trial lawyer, and therefore his claim of ineffective assistance failed. It is the same here. No jury would buy the psychologist's fantastic speculation that when Neal advanced with pipe and knife against Mrs. Waid he saw his mother and was frightened, or the conclusion that he should be punished more lightly because he thought he was "only" killing his mother, who had mistreated him when he was a child. Had this evidence come in, the jury would also have learned that Neal has no history of psychiatric illness and that he is not the good worker or good person or good neighbor that current counsel seek to depict him as. His present lawyer speculates that maybe the bad stuff could somehow have been kept from the jury. But when defense counsel conduct an audit of their client's past in an effort to persuade a jury to be merciful, the prosecutor is entitled to bring before the jury the aspects of the defendant's past that would be likely to dissuade the jury from showing mercy. *Dawson v. Delaware*, 503 U.S. 159, 167, 112 S.Ct. 1093, 1098–99, 117 L.Ed.2d 309 (1992); *People v. Brown*, 172 Ill.2d 1, 216 Ill.Dec. 733, 754, 665 N.E.2d 1290, 1311 (1996); cf. *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). This no doubt is what would have happened, and if so there is no reason to think that Neal would have benefited from the fuller investigation that he argues should have been conducted at the time of his trial.

The other grounds on which Neal seeks relief are frivolous, barred by procedural default, or barred by the decisions of this court. We rest on the district court's discussion of them. Also before us, however, is Neal's motion to defer our decision of his appeal until a state court in which he has filed a third petition for postconviction relief conducts an evidentiary hearing. There is no suggestion here, as there was in *Pitsonbarger v. Gramley*, No. 95–3912 (7th Cir. Sept. 10, 1996) (per curiam), where another panel of this court granted an otherwise similar motion, that the issues presented by Neal's third postconviction petition are entangled with the issues of federal law presented by this appeal or that their resolution might affect our decision of the appeal. The state did not oppose Pitsonbarger's motion (*id.* at 2); had it insisted on a prompt federal decision, it would have been entitled to one even if the pending state petition presented federal claims. Otherwise the prisoner could obtain indefinite delay by splintering his federal claims, a course of action disapproved by the Supreme Court even before the Antiterrorism and Effective Death Penalty Act, *In re Blodgett*, 502 U.S. 236, 239, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992) (per curiam), and contrary to the spirit and letter of that Act. Neal's lawyer is frank that the reason for his motion is to circumvent the limitations that the Act places on the filing of successive motions for federal habeas corpus; for he thinks that the decision of the state court on the third petition may provide a basis for the filing of a second petition for federal habeas corpus. It would not be proper for us to cooperate in an effort to thwart congressional policy by using the device of a stay to transform two petitions for federal habeas corpus into one. If Neal can justify the filing of a second petition under the criteria of the applicable law, 28 U.S.C. § 2244(b)(2), then he will be able to file it. But he is not permitted to do indirectly what the law forbids him to do directly—and by doing so protract further this already unreasonably protracted proceeding: the district court took four years to turn down Neal's meritless petition.

In light of the fact that Neal's third petition for state postconviction relief presents, we are told, issues solely of state law,

we remind Neal that the commission of errors of state law in a state judicial proceeding does not deny the party harmed by those errors due process of law. E.g., *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991).

AFFIRMED.