On Application for Rehearing
MADDOX, Justice.
The opinion of January 24, 1997, is withdrawn and the following opinion is substitute ed therefor.
William Bush was originally convicted on November 18, 1981, of the capital offense of murder committed during the commission of a robbery, Ala.Code 1975, § 13A-5-40(a)(2), and was sentenced to death. Following appeals and retrials, he was convicted a third time on February 1, 1991, and a third time was sentenced to death. The facts and history of this case are sufficiently set out in the opinion of the Court of Criminal Appeals. See Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995).
The Court of Criminal Appeals affirmed Bush’s conviction and death sentence and subsequently overruled his application for rehearing. We granted certiorari review pursuant to Rule 39(c), Ala.R.App.P.
Rule 39(k), Ala.R.App.P., provides that “[i]n all cases in which the death penalty has been imposed, upon review of the opinion of the Court of Criminal Appeals on certiora-ri, the Supreme Court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner.” See also Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). “ ‘Plain error’ arises only if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceeding. United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). See also Ex parte Womack, 435 So.2d 766 (Ala.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 *139 (1983).” Ex parte Adkins, 600 So.2d 1067, 1068-69 (Ala.1992), quoting Ex parte Bankhead, 585 So.2d 112, 117 (Ala.1991). Accordingly, this Court has reviewed the record for any error that would have seriously affected the fairness or integrity of the judicial proceedings. See Ex parte Lawhorn, 581 So.2d 1179 (Ala.1991), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991).
The Court of Criminal Appeals, in its opinion, addressed each of the issues that Bush raised, and, based upon our review of that opinion and the record on appeal, and after considering the arguments made in Bush’s brief and at oral arguments, we hold that the judgment of the Court of Criminal Appeals is due to be affirmed.
Bush makes several “plain error” arguments that neither the trial court nor the Court of Criminal Appeals addressed; only one of those calls for any discussion here. That argument is that Bush’s incarceration for 16 years awaiting the execution of his death sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution.
Bush relies primarily upon Lackey v. Scott, 885 F.Supp. 958 (W.D.Tex.1995), a case in which an inmate claimed that his lengthy incarceration on death row constituted cruel and unusual punishment. There, the federal district court stayed the execution in order to address the issue, but the Fifth Circuit Court of Appeals vacated the stay, holding that this particular claim was barred. See Lackey v. Scott, 52 F.3d 98 (5th Cir.1995). On Lackey’s petition, the Supreme Court issued a per curiam order granting a stay of execution “pending the district court’s consideration of petitioner’s petition for a writ of habeas corpus.” Lackey v. Scott, 514 U.S. 1093, 115 S.Ct. 1818, 131 L.Ed.2d 741 (1995). The district court, based upon Fearance v. Scott, 56 F.3d 633 (5th Cir.), cert. denied, — U.S. -, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995) (which held that the legal theory underlying a Lackey claim is not novel and thus does not meet the novelty exception to the abuse-of-the-writ doctrine), dismissed Lackey’s claim as an abuse of the writ. See 83 F.3d at 117. On appeal, the Fifth Circuit affirmed, holding that “Lackey’s claim ... fails on the merits, because White [v. Johnson, 79 F.3d 432 (5th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996)], holds that inordinate delay in carrying out an execution does not violate the prisoner’s Eighth Amendment rights. Id. at 439.” Lackey v. Johnson, 83 F.3d 116, 117 (5th Cir.), cert. denied, — U.S. -, 117 S.Ct. 276, 136 L.Ed.2d 198 (1996).
Nevertheless, the same issue has also been addressed by the Ninth Circuit Court of Appeals in McKenzie v. Day, 57 F.3d 1461 (9th Cir.), cert. denied, 514 U.S. 1104, 115 S.Ct. 1840, 131 L.Ed.2d 846 (1995), where McKenzie, the petitioner, argued that a 20-year delay in the execution of his death sentence amounted to cruel, unusual, and arbitrary punishment. The Ninth Circuit stated:
“ ‘A defendant must not be penalized for pursuing his constitutional rights, but he also should not be able to benefit from the ultimately unsuccessful pursuit of those rights. It would indeed be a mockery of justice if the delay incurred during the prosecution of claims that fail on the merits could itself accrue into a substantive claim to the very relief that had been sought and properly denied in the first place. If that were the law, death-row inmates would be able to avoid their sentences simply by delaying proceedings beyond some threshold amount of time, while other death-row inmates — less successful in their attempts to delay — would be forced to face their sentences. Such differential treatment would be far more ‘arbitrary and unfair’ and ‘cruel and unusual’ than the current system of fulfilling sentences when the last in the line of appeals fails on the merits. We thus decline to recognize Richmond’s lengthy incarceration on death row during the pendency of his appeals as substantively and independently violative of the Constitution.’
[Richmond v. Lewis,] 948 F.2d [1473,] at 1491-92 [ (9th Cir.1990)].
[[Image here]]
“... The delay has been caused by the fact that McKenzie has availed himself of *140 procedures our law provides to ensure that executions are carried out only in appropriate circumstances. That this differs from the practice at common law, where executions could be carried out on the dawn following the pronouncement of sentence, see [Pratt & Morgan v. Attorney General for Jamaica, 3 S.L.R. 995, 2 A.C. 1, 4 All E.R. 769 (Privy Council 1993),] is a consequence of our evolving standards of decency, which prompt us to provide death row inmates with ample opportunities to contest their convictions and sentences. Indeed, most of these procedural safeguards have been imposed by the Supreme Court in recognition of the fact that the common law practice of imposing swift and certain executions could result in arbitrariness and error in carrying out the death penalty. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We cannot conclude that delays caused by satisfying the Eighth Amendment themselves violate it.
“We are also mindful that sustaining McKenzie’s claim would dramatically alter the calculus in granting stays of execution in the hundreds of death penalty cases now pending before the state and federal courts. By and large, courts have erred on the side of caution in granting stays of execution sought by death row inmates. While the resulting delay may undermine the state’s interest in carrying out its sentence expeditiously, see In re Blodgett, 502 U.S. 236, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992), death row inmates have generally been successful in arguing that stays of execution should be freely granted because the state’s interest in carrying out its sentence will not be permanently impaired. This argument would lose much of its force in a regime where the state risks being pushed permanently out of bounds if the execution is too long deferred by the process of adjudication. By and large,, the delay in carrying out death sentences has been of benefit to death row inmates, allowing them to extend their lives, obtain commutation or reversal of their sentences or, in rare cases, secure complete exoneration. Sustaining a claim such as McKenzie’s would, we fear, wreak havoc with the orderly administration of the death penalty in this country by placing a substantial premium on speed rather than accuracy.
[[Image here]]
“... McKenzie nevertheless argues that we have an obligation to enter a stay because the Supreme Court recently entered a stay in Lackey to allow the district court in that case to consider whether inordinate delay in carrying out the sentence of death constitutes cruel and unusual punishment. Lackey v. Scott, 514 U.S. 1093, 115 S.Ct. 1818, 131 L.Ed.2d 741 (1995). McKenzie argues that the Supreme Court’s stay in Lackey is a signal that the inferior federal courts must enter stays of execution in all cases raising colorable Lackey claims.
“... Finally, we read the Supreme Court’s laconic stay in Lackey as an indication that the justices wish to see the matter explored in cases where it is properly raised, not as a ruling that stays must be entered in all cases raising Lackey claims in disregard of all other equitable considerations. ...
“... When considered in light of what we see as a low probability of ultimate success on the merits of McKenzie’s Lackey claim, we find no basis for exercising our equitable discretion in issuing a stay.
57 F.3d at 1466-69. In its note 16, the McKenzie court stated:
“Indeed, at least two other prisoners have been executed recently even though they raised potentially meritorious Lackey claims on the eve of their executions. See Free v. Peters, 50 F.3d 1362 (7th Cir.), cert. denied, 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 247 (1995); Williams v. Chrans, 50 F.3d 1363 (7th Cir.1995).”
57 F.3d at 1468.
Based on the foregoing, we find no merit in Bush’s argument that the same constitutional protections that have kept him from being executed for the past 16 years are simultaneously violating his constitutional rights.
OPINION OF JANUARY 24, 1997, WITHDRAWN; OPINION SUBSTITUT *141 ED; APPLICATION OVERRULED; AFFIRMED.
HOOPER, C.J., and SHORES, COOK, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.