BALDOCK, Circuit Judge, dissenting:
Today, this Court holds we do not have appellate jurisdiction over grants of Rhines stays in capital cases. In so holding, the Court fails to see the forest for the trees. Despite the Supreme Court's repeated admonitions that we should give 28 U.S.C. § 1291 a "practical" rather than a "technical" construction, the Court takes an overly technical view of § 1291 by neglecting to put the grant of a Rhines stay in the proper context of AEDPA and the policy behind enforcing a stringent final judgment rule. The Court further ignores salient Supreme Court precedent about the collateral order doctrine and severely understates a state's important interest in executing its sentence of death without delay-in this case, against Petitioner Troy Kell, who brutally murdered a fellow inmate almost twenty-five years ago . For these reasons, I cannot join the Court's opinion.
I.
The Court's opinion brings to mind the 1989 Report of the Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, which was formed by Chief Justice Rehnquist and chaired by Justice Powell. Judicial Conference of the U.S., Ad Hoc Comm. on Fed. Habeas Corpus in Capital Cases, Comm. Report and Proposal (Aug. 23, 1989) [hereinafter Powell Comm. Report]. The Committee determined federal habeas law "has led to piecemeal and repetitious litigation, and years of delay between sentencing and a judicial resolution as to whether the sentence was permissible under the law." Id. at 1. The Committee specifically noted: "The lack of coordination between the federal and state legal systems often results in inefficient and unnecessary steps in the course of litigation." Id. at 2.
Against this backdrop, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)-the long title of which is "An Act to deter terrorism, provide justice for victims, provide for an effective death penalty , and for other purposes."
*468 Pub. L. No. 104-132, 110 Stat. 1214 (1996) (emphasis added). In providing for an effective death penalty, AEDPA aims to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." Rhines v. Weber , 544 U.S. 269, 276, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (citing Woodford v. Garceau , 538 U.S. 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) ). Toward this end, AEDPA imposes a one-year statute of limitations on the filing of a federal habeas petition. 28 U.S.C. § 2244(d). Another purpose of AEDPA is to promote comity by "encourag[ing] petitioners to seek relief from state courts in the first instance." Rhines , 544 U.S. at 276, 125 S.Ct. 1528. AEDPA achieves this goal by "tolling the 1-year limitations period while a 'properly filed application for State post-conviction or other collateral review' is pending." Id. (citing 28 U.S.C. § 2244(d)(2) ).
Prior to the passage of AEDPA, a district court was required to dismiss a federal habeas petition that included both exhausted and unexhausted claims-that is, a "mixed" petition. Rose v. Lundy , 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). After dismissal, a petitioner could either resubmit the habeas petition with only exhausted claims or exhaust his claims in state court and later file a new petition in federal court. Id. The Powell Committee specifically identified this "moving back and forth between the federal and state systems in the process of exhausting state remedies" as one of the aforementioned "inefficient and unnecessary steps in the course of litigation." Powell Comm. Report, supra page 1, at 2. After Congress passed AEDPA, Lundy 's total exhaustion rule created a problem when petitioners filed mixed petitions in federal court. Because of the new one-year statute of limitations, dismissal of mixed petitions pursuant to Lundy likely foreclosed the possibility of federal review. Rhines , 544 U.S. at 275, 125 S.Ct. 1528. To prevent this result, district courts began staying, instead of dismissing, the federal habeas case to allow the petitioner to exhaust his claims in state court. Id. at 276, 125 S.Ct. 1528. The district court would then lift the stay after the petitioner exhausted his claims and resume federal proceedings. Id. at 276-77, 125 S.Ct. 1528.
In Rhines , the Supreme Court upheld this stay-and-abeyance procedure but acknowledged "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the purposes of AEDPA. Id. at 277, 125 S.Ct. 1528. Rather than reducing delays in the execution of a sentence, stay and abeyance "allow[s] a petitioner to delay the resolution of the federal proceedings." Id. And rather than encouraging petitioners to first seek relief in state court, stay and abeyance "decreas[es] a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Id. Stay and abeyance potentially undermines AEDPA's purposes even more in capital cases, for capital petitioners alone have every incentive "to prolong their incarceration and avoid execution of the sentence of death." Id. at 277-78, 125 S.Ct. 1528 ; see also Lundy , 455 U.S. at 520, 102 S.Ct. 1198 ("The [non-capital] prisoner's principal interest, of course, is in obtaining speedy federal relief on his claims."). Thus, the Supreme Court cautioned that stay and abeyance of mixed petitions "should be available only in limited circumstances ." Id. at 277, 125 S.Ct. 1528 (emphasis added). Specifically, stay and abeyance is only available if "[1] the petitioner had good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278, 125 S.Ct. 1528.
II.
In 1994, Petitioner Troy Kell, a white supremacist incarcerated in state prison, *469 stabbed African-American inmate Lonnie Blackmon sixty-seven times. Petitioner's attack lasted approximately two and a half minutes, during which Petitioner walked away twice only to return again to Blackmon's writhing body to continue to stab him. Blackmon, who was handcuffed and held down by Petitioner's accomplice during the attack, bled to death. The facts of the murder have never been in dispute, as the murder was captured on prison security video. Petitioner proceeded to trial, and in 1996, a jury found Petitioner guilty of aggravated murder and sentenced him to death. In 2002, the Supreme Court of Utah upheld his conviction and sentence on direct appeal. State v. Kell , 61 P.3d 1019 (Utah 2002). Petitioner then pursued state post-conviction relief. The post-conviction court dismissed the petition, and the Supreme Court of Utah upheld this dismissal in 2008. Kell v. State , 194 P.3d 913 (Utah 2008). In January 2009, Petitioner filed a pro se motion for relief under Utah Rule of Civil Procedure 60(b), alleging ineffective assistance of his appointed post-conviction counsel. Later in 2009, Petitioner, through appointed counsel, filed a federal habeas petition. Shortly thereafter, Petitioner sought and received a Rhines stay in his federal case while he pursued his claims in state court. In 2012, Petitioner's state claims were denied. Kell v. State , 285 P.3d 1133 (Utah 2012).
Petitioner's federal case resumed after the three-year Rhines stay. In 2013, Petitioner filed an amended habeas petition. In this petition filed seventeen years after his conviction, Petitioner raised the new claim that the trial court gave an unconstitutional supplemental jury instruction that shifted the burden of proof onto Petitioner during the penalty phase deliberations. In support, Petitioner attached three juror declarations signed eight months before he filed his amended petition. Two jurors recalled the trial judge speaking to the jury after deliberations began. The other juror recalled, in more specificity, that when the judge spoke to the jurors during deliberations, he said "that [Petitioner's] attorney's [sic] had to show us that [Petitioner's] life should be spared." ROA Vol. IV, 666. Petitioner noted "[t]here are no indications in the trial transcripts of a question from the jury after the beginning of deliberations, either during the guilt or penalty phases." Id. Petitioner concluded: "The error that resulted from [the trial judge's] ex parte response which shifted the burden of proof for the entire penalty proceeding away from the State and onto [Petitioner], was a prejudicial error of constitutional magnitude, requiring reversal." Id. at 666-67.
Over four and a half years after filing his amended habeas petition , Petitioner filed a motion for a second Rhines stay so that he could exhaust his supplemental-instruction claim (and another claim not relevant to this appeal) in state court.[1] In November 2017, the district court granted the stay, holding Petitioner satisfied the three Rhines elements because (1) there was good cause for not previously exhausting the supplemental-instruction claim; (2) the claim was potentially meritorious; and (3) there was no indication Petitioner engaged in abusive or dilatory tactics. As to good cause, Petitioner argued he did not previously exhaust the supplemental-instruction claim because his post-conviction counsel was ineffective and failed to interview any jurors. In addressing this claim, *470 the district court first explained that neither Supreme Court nor Tenth Circuit precedent has defined "good cause" in the Rhines context. As a result, some district courts have held "good cause in the Rhines context is akin to good cause to excuse procedural default in federal court," while others have given it a "more expansive and equitable reading." ROA Vol. VII, 1725. Relying on a Ninth Circuit opinion and two District of Utah cases, the district court adopted the latter standard that "good cause for a Rhines stay cannot be any more demanding than a showing of cause for procedural default under Martinez v. Ryan , 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and, in fact, may be less demanding." Id. at 1726 (citing Blake v. Baker , 745 F.3d 977 (9th Cir. 2014) ; Lafferty v. Crowther , No. 2:07-CV-322, ECF No. 379 (D. Utah Oct. 30, 2015) ; Archuleta v. Crowther , No. 2:07-CV-630, ECF No. 107 (D. Utah Nov. 12, 2014) ). After establishing the standard, the court concluded that Petitioner's "post-conviction counsel's deficient performance constitutes cause under Rhines ." Id. at 1727.
Regarding the potential merit of the supplemental-instruction claim, the district court did not consider the State's arguments that the claim would be time-barred or procedurally barred in state court. Invoking notions of "federalism" and "comity," the court held the state courts must "have the opportunity to make those procedural decisions." Id. at 1728-29. The court then explained Petitioner's claim and apparently held it was potentially meritorious. The district court's analysis-which, again, purports to be about whether the supplemental-instruction claim was potentially meritorious-reads in full:
Counsel in [Petitioner's] state habeas proceedings admitted that he was unaware of this issue because he failed to speak with any of the jurors, and that there was no strategic reason for his failure to do so. Because counsel was unaware of the issue, he failed to raise this claim to the state court, meaning that [Petitioner] has been denied the opportunity to have this potentially significant claim reviewed by the state court. Counsel's failure to raise this potentially meritorious claim constitutes good cause under Rhines .
Id. at 1732 (citation omitted). In other words, the district court concluded Petitioner's claim was potentially meritorious without analyzing whether the claim was potentially meritorious. Instead, the district court looked to Petitioner's counsel's failure to investigate and raise the claim in state court-considerations not at all relevant to whether Petitioner's constitutional rights were potentially violated by an alleged ex parte supplemental jury instruction-and confusingly determined this failure constitutes "good cause," a conclusion the court had already reached in element one.
Lastly, the district court held there was "no indication that [Petitioner] has engaged in intentional or abusive dilatory litigation tactics." Id. at 1733. The court reasoned federal proceedings were stayed until 2012, and Petitioner had followed the case management schedule. Rejecting the State's argument that nothing prevented Petitioner from bringing the claim in state court earlier, the court held Petitioner satisfied the third Rhines element.
After determining all three elements were satisfied, the district court issued the stay. Only then did Petitioner file a petition in state court raising the supplemental-instruction claim. Not surprisingly, the state trial court has since rejected this claim as both time and procedurally barred. The case is now pending before the Supreme Court of Utah.
*471 Kell v. Ben zon , No. 20180788 (appeal docketed Oct. 1, 2018).
In the meantime, the State requested that the district court certify for immediate appeal its grant of a second Rhines stay under 28 U.S.C. § 1292(b). The district court denied the State's request because "there is not sufficient basis to find a difference of opinion on which [good cause] standard should apply"-a conclusion that is simply impossible to reconcile with the court's previous order noting district courts have applied different "good cause" standards. Doc. 279, at 4. The State also sought to appeal the stay pursuant to 28 U.S.C. § 1291, arguing (1) the standard for "good cause" under Rhines should be the same as "cause" to overcome procedural default and (2) the district court abused its discretion under all three Rhines elements in granting the stay. Before we can reach the merits of these arguments, we must of course have jurisdiction to do so. Because this is an interlocutory appeal and the district court oddly enough saw fit to deny the State's request for certification of appeal under § 1292(b), the only potential basis for this Court to exercise jurisdiction is § 1291 by way of the collateral order doctrine.[2]
III.
This Court has "jurisdiction of appeals from all final decisions of the district courts of the United States[.]" 28 U.S.C. § 1291. Encompassed in section 1291's definition of "final decisions" is "a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.' " Mohawk Indus., Inc. v. Carpenter , 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009). This "small class" includes decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
*472 Cohen v. Beneficial Indus. Loan Corp. , 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (emphasis added). The Supreme Court "has long given [ section 1291 ] this practical rather than a technical construction," id. (emphasis added), and has emphasized the class of collaterally appealable orders is "narrow and selective in its membership," Will , 546 U.S. at 350, 126 S.Ct. 952. As the Court's opinion explains, to fall within this narrow class of decisions, the order must (1) be "conclusive"; (2) "resolve important questions separate from the merits"; and (3) be "effectively unreviewable on appeal from the final judgment in the underlying action." Swint v. Chambers Cty. Comm'n , 514 U.S. 35, 41, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). As no question exists whether the first element is satisfied, I turn to the second and third elements.[3]
A.
The second collateral order doctrine element requires the order to "resolve important questions separate from the merits." Swint , 514 U.S. at 41, 115 S.Ct. 1203. This separateness requirement "is a distillation of the principle that there should not be piecemeal review of 'steps towards final judgment in which they will merge.' " Moses H. Cone , 460 U.S. at 12 n.13, 103 S.Ct. 927. The Court and I differ on exactly what must be separate in order to satisfy this element. Whereas this Court holds the entire collateral order must be completely separate from the merits, I contend that at least one issue involved in granting a Rhines stay must be completely separate from the merits. This is clearly what the Supreme Court has required. E.g. , Microsoft Corp. v. Baker , --- U.S. ----, 137 S. Ct. 1702, 1708 n.3, 198 L.Ed.2d 132 (2017) (stating the decision must "resolve important issues 'completely separate from the merits' " (emphasis added)); Will , 546 U.S. at 349, 126 S.Ct. 952 (stating the order must "resolve an important issue completely separate from the merits of the action" (emphasis added)); Sell v. United States , 539 U.S. 166, 176, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) (stating a decision is "appealable as a collateral order when it ... resolves an important issue completely separate from the merits of the action" (emphasis added) (brackets and quotations omitted)); Quackenbush v. Allstate Ins. Co. , 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (stating the order must "conclusively determine a disputed question that is completely separate from the merits of the action" (emphasis added) (brackets and quotations omitted)); Johnson v. Jones , 515 U.S. 304, 310-11, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (stating the order must "resolve an important issue completely separate from the merits of the action" (emphasis added)); Dig. Equip. Corp. v. Desktop Direct, Inc. , 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (stating the decision must "resolve important questions completely separate from the merits" (emphasis added)); Richardson-Merrell, Inc. v. Koller , 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)
*473 (stating the order must "resolve an important issue completely separate from the merits of the action" (emphasis added)); Coopers & Lybrand v. Livesay , 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (stating "the order must ... resolve an important issue completely separate from the merits of the action" (emphasis added)); Abney v. United States , 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (stating the decision in Cohen "resolved an issue completely collateral to the cause of action asserted" (emphasis added)).
Of utmost importance, in each of these cases, "completely separate" modified "issues," "an issue," "a question," and "questions," not "an order." Therefore, the only reasonable conclusion to be reached is that there must be "an issue" that is "completely separate" from the merits of the action. Such a conclusion is consistent with the Supreme Court's explicit rejection of the argument that there must be no overlap whatsoever between a collateral order and the merits of a claim. Mitchell , 472 U.S. at 529 n.10, 105 S.Ct. 2806. In Mitchell , the Supreme Court explained that if "any factual overlap between a collateral issue and the merits of the plaintiff's claim is fatal to a claim of immediate appealability," then denials of claims of double jeopardy and absolute immunity could not be appealed, for such claims necessarily require an inquiry into a plaintiff's factual allegations. Id. But these claims are appealable pursuant to the collateral order doctrine. Nixon v. Fitzgerald , 457 U.S. 731, 742-43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) ; Abney , 431 U.S. at 662, 97 S.Ct. 2034. With this understanding, the Supreme Court held an order denying qualified immunity is immediately appealable. Mitchell , 472 U.S. at 530, 105 S.Ct. 2806.
The Court today understands this to contravene the requirement that we must view the class of orders as a whole. To be clear, I absolutely agree with the well-settled requirement that we must focus on the class of orders. We cannot focus on the class of orders, however, without looking to the issues the class of orders generally raise. Here, we must look to Rhines -stay-specific issues. Looking to Rhines -stay-specific issues is wholly different than analyzing the issues on a case-by-case basis. At no point in this dissent do I advocate for analyzing case-specific issues-something the Court and I agree is unacceptable. In sum, we must look to issues that orders granting Rhines stays generally raise (as opposed to the issues this order granting a Rhines stay raises); if one or more of these issues is completely separate from the merits, this element is satisfied. From what I understand, the Court thinks we must look to issues that any order granting a Rhines stay could hypothetically raise; if any of these issues overlap with the merits, this element is not satisfied. This understanding does not comport with Supreme Court precedent, nor our own. Mitchell , 472 U.S. at 529 n.10, 105 S.Ct. 2806 ; United States v. Bolden , 353 F.3d 870, 876 (10th Cir. 2003) (assuming without deciding an issue implicated in an order could overlap with the underlying merits but that "on the whole such orders ... satisfy the separability requirement").
The requirement that there be "an issue" that is "completely separate" from the merits is undoubtedly met in this case. In fact, at least three such issues are involved in granting a Rhines stay. The first, which is a purely legal issue, is whether the appropriate standard for "good cause" is akin to "cause" to overcome procedural default or is something less stringent. "Cause" to overcome procedural default requires a petitioner to show "something external to the petitioner, something that cannot fairly be attributed to him" or his counsel prevented the petitioner *474 from raising a claim. Coleman v. Thompson , 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Neither we nor the Supreme Court has applied this definition or otherwise defined "good cause" in the Rhines context. In dicta, however, the Supreme Court has stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." Pace v. DiGuglielmo , 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). This statement could be interpreted as indicating a lesser standard than "cause" to overcome procedural default is appropriate for "good cause" in the Rhines context. Accordingly, district courts are divided on what standard to use. Compare Hernandez v. Sullivan , 397 F. Supp. 2d 1205, 1207 (C.D. Cal. 2005) ("[T]he Court deems it appropriate to look to procedural default case law for guidance in determining whether Petitioner has demonstrated the requisite 'good cause' for failing to exhaust his unexhausted claims prior to filing this habeas action."), with Rhines v. Weber , 408 F. Supp. 2d 844, 849 (D.S.D. 2005) ("[T]his court believes that the Supreme Court suggested a more expansive definition of 'good cause' in Pace and Rhines than the showing needed for 'cause' to excuse a procedural default."). This issue is critically important because the resolution of the standard could be the deciding factor in many cases.
Unfortunately, the Court today sidesteps the State's purely legal argument about the "good cause" standard and unnecessarily criticizes the State's arguments by noting we must look to categories of cases rather than the particular arguments raised in an individual case. Maj. Op. at 455-57. But literally every grant of a Rhines stay, not just this particular grant of a Rhines stay, must decide what the appropriate standard for determining "good cause" is.[4] Ultimately, by giving this issue short shrift, the Court avoids acknowledging the obvious: this is a purely legal issue that has no overlap with the merits of the case. In other words, this issue is most assuredly "a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case." Mitchell , 472 U.S. at 530 n.10, 105 S.Ct. 2806.
The second issue that does not overlap with the merits is whether the district court can consider state time and procedural bars in determining whether a claim is "potentially meritorious." In this case, the district court answered in the negative: "[I]n considering whether [Petitioner's] claims are potentially meritorious, this court will not address possible state court time and procedural bars, but will leave the determination of the procedural posture of the claims to the state court." ROA Vol. VII, 1729. The district court supported its holding with statements from a district court order, two wholly inapposite out-of-circuit opinions, and one Tenth Circuit opinion that does not address this issue. Id. at 1728-29 (citing Lafferty v. Crowther , 2015 WL 6875393 (D. Utah 2015) ;
*475 Simpson v. Camper , 927 F.2d 392, 393 (8th Cir. 1991) ; Pike v. Guarino , 492 F.3d 61, 74 (1st Cir. 2007) ; Fairchild v. Workman , 579 F.3d 1134, 1153 (10th Cir. 2009) ). The district court's grasp at non-binding (and unpersuasive) authority to support its position is understandable because, again, neither the Supreme Court nor the Tenth Circuit has weighed in on whether the refusal to address possible state court time and procedural bars is valid. Like the question of the good cause standard, this purely legal issue is clearly completely separate from the merits of a petitioner's claim.
Additionally, the third Rhines element, which requires a court to consider whether the petitioner engaged in intentionally dilatory litigation tactics, does not overlap with the merits. While this element does not appear to present a purely legal issue, the facts involved are completely separate from the facts involved in a petitioner's unexhausted claim. At this point, we have three issues, two of which are purely legal, that have no overlap with the merits of a petitioner's claim-none whatsoever. The Court today fails to acknowledge this reality.
The Court instead focuses only on two issues that it asserts overlap with the merits: the application of the "good cause" standard to the facts of the case and whether the claim has "potential merit." This latter issue, which is "a fraction of a fraction" of the total inquiry in issuing a Rhines stay, undoubtedly overlaps with the merits. Rep. Br. at 5. The former issue's overlap with the merits, however, is questionable. The Court's assertion that the application of the good cause standard will "often overlap with a court's preliminary assessment of the merits" seems to me to be an exaggeration. Maj. Op. at 458. The Court points to two situations in which this could happen: if a petitioner raises a Brady claim and if a petitioner raises a different claim of ineffective assistance of counsel. As explained above, I do not understand Supreme Court precedent to require us to engage in a hypothetical inquiry of all possible permutations of claims that could be brought in order to determine whether an order is appealable pursuant to the collateral order doctrine. Accordingly, I remain focused on the issues grants of Rhines stays generally raise, rather than every issue a grant of a Rhines stay could hypothetically raise.
Even though the district court must consider some factual allegations in a petition before granting a Rhines stay (a duty that the district court failed miserably to perform in this case), a grant of a Rhines stay undoubtedly "resolve[s] important issues 'completely separate from the merits.' " Microsoft Corp. , 137 S. Ct. at 1708 n.3. Accordingly, the second element of the collateral order doctrine is satisfied.[5]
B.
The third collateral order doctrine element requires the order to be "effectively *476 unreviewable on appeal from the final judgment in the underlying action." Swint , 514 U.S. at 41, 115 S.Ct. 1203. This element, too, is undoubtedly met. At no other point will this Court have the opportunity to decide the important issues at stake in granting a Rhines stay. Of course, if the Petitioner obtains relief from the Utah Supreme Court, the Rhines stay issues will never again arise in this case because Petitioner will be granted a new state trial. If the Utah Supreme Court denies relief and then the district court denies habeas relief on the previously unexhausted claim, the issues would be moot on appeal. Petitioner posits the State could appeal the Rhines stay issues after final judgment if he ultimately obtains habeas relief on the previously unexhausted claim. How can this possibly be? Say, the Petitioner prevails in the district court and the State appeals, arguing among other things that the district court abused its discretion in granting a Rhines stay years earlier. Would the district court's grant of a Rhines stay not be moot at that point? What relief could the court possibly grant the State if it prevails on that claim? None! That particular controversy is over .
The Court points out that "the district court's ultimate rulings on the habeas claims would be reviewable after the final judgment." Maj Op. at 466. Of course. But that certainly does not mean "the collateral-order doctrine's third element would remain unsatisfied even if the grant of a Rhines stay were to become moot." Id. at 466. We are not concerned here with whether other issues involved in this case, such as "the district court's ultimate rulings on the habeas claims," would be reviewable on appeal of the final judgment; we are concerned with whether the issues involved in granting a Rhines stay are reviewable on appeal of the final judgment.[6]
Even assuming a court has the opportunity to review a district court's issuance of a Rhines stay after final judgment-a proposition I vehemently disagree with-we must then look to the importance of the interests at stake. Whether an order is "effectively unreviewable" necessarily requires "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." Mohawk Indus., Inc. , 558 U.S. at 107, 130 S.Ct. 599 (quoting Dig. Equip. Corp. , 511 U.S. at 878-79, 114 S.Ct. 1992 ). "That a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed.' " Id. (quoting Dig. Equip. Corp. , 511 U.S. at 872, 114 S.Ct. 1992 ). "Instead, the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.' " Id. (quoting Will , 546 U.S. at 352-53, 126 S.Ct. 952 ) (emphasis added). The certain "high order" values the Supreme Court has accepted as being important enough to *477 not delay review until the entry of final judgment include: "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." Will , 546 U.S. at 352-53, 126 S.Ct. 952.
The "decisive" question, then, is just this: does delaying review of the Rhines stay until after a petitioner exhausts his claims in state court and returns to federal court "imperil a substantial public interest" or "some particular value of a high order"? See Mohawk Indus., Inc. , 558 U.S. at 107, 130 S.Ct. 599. The answer is a resounding yes. The "substantial public interest" or "value of a high order" at issue when a Rhines stay is granted is a state's right to enforce its criminal judgments, particularly in capital cases. "Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of a State to pass laws means little if the State cannot enforce them." McCleskey v. Zant , 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In fact, the Supreme Court has held a state's "sovereign power to enforce the criminal law" is an interest of "great weight." In re Blodgett , 502 U.S. 236, 239, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992) (per curiam). States suffer "severe prejudice" when they are prevented from exercising this power. Id. (holding Washington "sustained severe prejudice by [a] 2½-year stay of execution"). In particular, "the criminal law is deprived of much of its deterrent effect." Teague v. Lane , 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ; see also McCleskey , 499 U.S. at 491, 111 S.Ct. 1454 (discussing the need for finality in criminal cases). Further, the state loses legitimacy, as "[t]he resulting lack of finality undermines public confidence in our criminal justice system." Powell Comm. Report, supra page 1, at 1.
Not only has the Supreme Court put "great weight" on a state's power to enforce its criminal law, Congress has also prioritized this power with the passage of AEDPA. One of the driving forces in passing AEDPA was to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ." Rhines , 544 U.S. at 276, 125 S.Ct. 1528 (emphasis added). AEDPA has no teeth if federal habeas law still leads "to piecemeal and repetitious litigation, and years of delay between sentencing and a judicial resolution as to whether the sentence was permissible under law," as it has in this case and potentially many others. Powell Comm. Report, supra page 1, at 1. Supreme Court precedent and AEDPA indicate a state's ability to enforce its criminal judgments without delay is a "substantial public interest" or "value of a high order" that ranks among "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." Will , 546 U.S. at 352-53, 126 S.Ct. 952.
The Court today does not dispute the importance of the issues at stake. Indeed, this would be difficult to do in light of the fact that this Court has previously held an appeal concerning an anti-SLAPP statute, which aims to "nip harassing litigation in the bud," was too important to be denied review until entry after final judgment. Los Lobos Renewable Power, LLC v. Americulture, Inc. , 885 F.3d 659, 666-67 (10th Cir. 2018). Instead, the Court focuses on "whether interlocutory review of Rhines stays would speed review or slow it through piecemeal review." Maj. Op. at 463. This is not the question under the third element of the collateral order doctrine.
*478 [7] Again, the "decisive" question is whether delaying review of the Rhines stay until after a petitioner exhausts his claims in state court and returns to federal court "imperil a substantial public interest" or "some particular value of a high order." See Mohawk Indus., Inc. , 558 U.S. at 107, 130 S.Ct. 599.
Let us not forget: Petitioner stabbed Blackmon to death almost twenty-five years ago; he was sentenced to death over twenty-two years ago; his direct appeals ended over sixteen years ago; his state post-conviction proceedings ended over ten years ago; his federal habeas petition was filed nearly ten years ago; he received his first Rhines stay, which lasted three years, over nine years ago; and his amended petition was filed over six years ago. The State of Utah most certainly has an undeniable interest, deemed important by both the Supreme Court and Congress, to carry out its punishment against Petitioner without further delay. This interest is indeed lost if the State cannot appeal the grant of the Rhines stay now. The delay-which is, in itself, a win for Petitioner-is exactly what harms the State's interest. Because delaying review would jeopardize both "a substantial public interest" and "some particular value of a high order," the grant of a Rhines stay in a capital case is "effectively unreviewable on appeal from a final judgment."
* * *
The Court cites to three other circuits in support of its holding that a grant of a Rhines stay is reviewable after final judgment: Grace v. Vannoy , 826 F.3d 813 (5th Cir. 2016) ; Howard v. Norris , 616 F.3d 799 (8th Cir. 2010) ; and Thompson v. Frank , 599 F.3d 1088 (9th Cir. 2010). The most important thing to note about Howard and Thompson is that neither considers "the decisive consideration " of "whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.' " Mohawk Indus., Inc. , 558 U.S. at 107, 130 S.Ct. 599 (quoting Will , 546 U.S. at 352-53, 126 S.Ct. 952 ) (emphasis added); Howard , 616 F.3d at 802-803 ; Thompson , 599 F.3d at 1090. This alone renders their analyses unpersuasive.
Even if we push that crucial fact aside, these cases otherwise rest on flimsy reasoning. In Thompson , the Ninth Circuit indeed held "[a] district court order staying proceedings to allow a state habeas petition to exhaust claims in state court is reviewable on appeal after final judgment." 599 F.3d at 1090. In support, the Ninth Circuit cited two cases: Valdovinos v. McGrath , 598 F.3d 568, 573-74 (9th Cir. 2010), vacated sub nom. Horel v. Valdovinos , 562 U.S. 1196, 131 S.Ct. 1042, 178 L.Ed.2d 860 (2011), and Olvera v. Giurbino , 371 F.3d 569, 574 (9th Cir. 2004). Olvera involved a district court's refusal to stay proceedings and, therefore, lends no support for the proposition for which the Ninth Circuit cited it. 371 F.3d at 574. Valdovinos , a vacated Ninth Circuit opinion, does not support Thompson 's holding *479 either. In Valdovinos , the State did not even argue the district court erred in granting a Rhines stay. Br. for Appellee, Valdovinos , 598 F.3d 568 (No. 08-15918), 2009 WL 2444195. Rather, the State argued that "the district court erred in allowing petitioner to amend his petition to include new and revised claims he first presented in his traverse after the AEDPA time limit had passed." Id. Of course, because the State did not argue the district court erred in granting a Rhines stay, the Petitioner did not argue such an issue was moot. Reply Br., Valdovinos , 598 F.3d 568 (No. 08-15918), 2009 WL 2444196. Perhaps confused, the Valdovinos court then-totally unsolicited-noted the district court did not abuse its discretion in issuing a Rhines stay. 598 F.3d at 573-74. This flippant advisory statement, which was made in passing as the Valdovinos court addressed the claim the State actually made in that case, sheds absolutely no light on whether the grant of a Rhines stay is effectively unreviewable on appeal from final judgment. Accordingly, by relying solely on Olvera and Valdovinos , Thompson reached its holding on paper-thin support, and this writer cannot take Thompson seriously for such a holding.
The Court also cites to Howard , which held the grant of a Rhines stay "fails the third condition [of the collateral order doctrine] 'because a district court's conclusion about whether a habeas claim has been exhausted is addressable on appeal after final judgment.' " 616 F.3d at 802 (quoting Thompson , 599 F.3d at 1090 ). In Howard , the Eighth Circuit noted it was "significant" that the petitioner did not "challenge the district court's application of the three Rhines factors, and thus [did] not challenge the delay involved in the stay itself." Id. at 803. Instead, the petitioner "challenge[d] the propriety of the stay only as it relate[d] to the merits of whether the district court erred in concluding some of [the petitioner's] claims were unexhausted." Id. Thus, Howard might not be applicable to our instant case, but even if it is, Howard 's sole reliance on Thompson in its one-sentence analysis of whether the issues could be addressed on appeal renders its analysis unpersuasive.
The latest circuit to join the conversation is the Fifth Circuit in Grace . Grace relied on Thompson and Howard -albeit in conjunction with a more thoughtful analysis-to reach the conclusion that Rhines stays are not appealable orders. Grace , 826 F.3d at 820-21. Of utmost importance, however, Grace was not a capital case. Id. at 819 ("Indeed, Grace was sentenced to life in prison; he is not delaying execution of a capital sentence."). The interest involved in Grace is completely different than the interest at issue in this case. Capital prisoners have every incentive to delay their proceedings, while other prisoners have every incentive to expedite their proceedings. Because of this inherent difference between capital and non-capital cases, Grace 's reasoning is not relevant to the instant capital case. Nothing in these three cases moves me in the slightest from my view that grants of Rhines stays in capital cases are effectively unreviewable on appeal from final judgment.
C.
As if satisfying the three collateral order doctrine elements was not enough, the policy behind limiting jurisdiction to "final" orders-which in many cases cuts against the exercise of jurisdiction, see, e.g. , Moses H. Cone , 460 U.S. at 31, 103 S.Ct. 927 (Rehnquist, J., dissenting)-supports our exercise of jurisdiction in this case. One policy behind section 1291's "finality" requirement is to "prevent[ ] the debilitating effect on judicial administration caused by piecemeal appeal disposition *480 of what is, in practical consequence, but a single controversy." Coopers & Lybrand , 437 U.S. at 471, 98 S.Ct. 2454 (quoting Eisen v. Carlisle & Jacquelin , 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ); see also Moses H. Cone , 460 U.S. at 31, 103 S.Ct. 927 (Rehnquist, J., dissenting) ("To be effective, judicial administration must not be leaden-footed."). In other words, the finality requirement of section 1291 prevents unnecessary steps back and forth between the federal district court and the federal appellate court. But ironically, piecemeal litigation is precisely what the issuance of a Rhines stay causes![8] Even though federal courts do not feel the "debilitating effect," it is certainly felt by our state brethren who are currently adjudicating Petitioner's supplemental-instruction claim that is in all likelihood time and procedurally barred. The waste of state judicial resources-not to mention the resources of the Utah Office of the Attorney General-is plain. While this is not the particular "debilitating effect on judicial administration" the finality requirement generally aims to prevent, it is no less of a "debilitating effect on judicial administration" in state court. In sum, because a Rhines stay already causes piecemeal litigation, the policy behind not exercising jurisdiction here-i.e., preventing piecemeal litigation-rings hollow.
IV.
The Supreme Court has made itself perfectly clear that only a "narrow class" of decisions fall within the collateral order doctrine, and I have taken this directive to heart. See Los Lobos Renewable Power, LLC , 885 F.3d at 673-76 (Baldock, J., dissenting from the Court's exercise of jurisdiction pursuant to the collateral order doctrine). The grant of a Rhines stay in capital cases, however, is one of the few decisions that falls within the narrow class. The Supreme Court clearly intended there to be meaningful restrictions on when a district court may issue a Rhines stay. As the district court's order demonstrates, there currently are none.
Because we have jurisdiction pursuant to the collateral order doctrine, I respectfully dissent. I would proceed to the merits.

The Court states that Petitioner requested a stay in 2014. Maj. Op. at 456 n.8. Just to be clear, this "request" consisted of one sentence buried in a 208-page reply brief to his petition, which obviously has not been ruled on. ROA Vol. VI, 1278. The fact remains that Petitioner did not file a motion to stay regarding the issue underlying this appeal until 2017-over four and a half years after filing his amended habeas petition.

I preface my discussion of the collateral order doctrine by noting Rhines itself was appealed to the Eighth Circuit pursuant to the collateral order doctrine. Rhines v. Weber , 346 F.3d 799, 800 (8th Cir. 2003) (per curiam) ("We have jurisdiction under the collateral order doctrine to review an interlocutory order holding a habeas petition in abeyance pending exhaustion of state court remedies."), vacated on other grounds , 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The Supreme Court granted certiorari in the case and, without mentioning the jurisdictional issue, proceeded to the merits. Rhines , 544 U.S. 269, 125 S.Ct. 1528. Even more, the Supreme Court remanded the case to the Eighth Circuit to exercise jurisdiction and adjudicate the case in accordance with the Supreme Court's opinion. Id. at 279, 125 S.Ct. 1528.
Federal courts, including the Supreme Court, "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp. , 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). The Supreme Court has undertaken this independent obligation and vigilantly guarded the exclusivity of the collateral order doctrine. See Will v. Hallock , 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) ("[W]e have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in membership."). In Will , for example, after granting certiorari on the merits of an issue, the Supreme Court vacated and remanded to the Court of Appeals to dismiss for lack of jurisdiction because the underlying order was not immediately appealable under the collateral order doctrine. Id. at 349, 126 S.Ct. 952. At the same time, as this Court points out, the Supreme Court's prior exercise of jurisdiction and subsequent remand in Rhines do not necessarily stand for the proposition that the stay was immediately appealable under the collateral order doctrine. See Hagans v. Lavine , 415 U.S. 528, 535 n.5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

An order is "conclusive" when "nothing in the subsequent course of the proceedings in the district court ... can alter the court's conclusion." See Mitchell v. Forsyth , 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This element is plainly met here. Nothing was tentative about the determination that Petitioner's federal proceedings would halt while Petitioner exhausted his supplemental-instruction claim in state court. A grant of a Rhines stay is only subject to revision in the same way every order is subject to revision. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 12 & n.14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This indicates "nothing in the subsequent course of the proceedings in the district court ... can alter the court's conclusion" that Petitioner was entitled to a Rhines stay. Accordingly, the district court's grant of a Rhines stay is conclusive.

Given a district court must hold "good cause" exists (which requires defining the "good cause" standard) in order to issue a Rhines stay, this fact is not up for debate. The Court "see[s] the issue differently" because if the Court proceeded to the merits, we might not reach the "good cause" issue and instead rule on other grounds. Maj. Op. at 456-57. But the question is not whether this Court would necessarily have to rule on the issue. At the risk of sounding like a broken record, the question is whether the district court's order resolves an issue that is completely separate from the merits. E.g. , Will , 546 U.S. at 349, 126 S.Ct. 952. In discussing whether this Court would have to decide the "good cause" standard, the Court has taken the reader down an irrelevant rabbit hole.

In its discussion of the second element, the Court asserts: "if the district court enters multiple Rhines stays, we could face three or more appeals with overlapping issues." Maj. Op. at 453. I understand that if Rhines stays are appealable and multiple Rhines stays are entered, this Court could face three or more appeals. But the Court does not clarify when these potential "three or more appeals" would concern "overlapping issues." Even where a district court issues multiple Rhines stays, each Rhines stay concerns different claims by a petitioner and therefore different issues. To illustrate, a district court issues a Rhines stay on claim x , allowing the petitioner to exhaust the claim in state court. After the petitioner exhausts claim x in state court and returns to federal court, the district court is not going to issue another Rhines stay for the purpose of allowing the petitioner to exhaust claim x . If there is a second Rhines stay, it would be issued for the petitioner to exhaust claim y . If both of these Rhines stays are appealed and then the final judgment is appealed, the "same issues" would not be before this Court three or more times.

The Court also states Petitioner could have filed a writ of mandamus rather than await final judgment. Maj. Op. at 465 n.17. But a writ of mandamus is not the relief the Supreme Court contemplated in Rhines . The standard for issuing a writ of mandamus is higher than the abuse of discretion standard. In re Cooper Tire & Rubber Co. , 568 F.3d 1180, 1186-87 (10th Cir. 2009). In fact, we have explicitly stated that "[t]here must be more than what we would typically consider to be an abuse of discretion in order for the writ to issue." Id. at 1186. In Rhines , however, the Supreme Court stated three times that the standard of review for Rhines stays is "abuse of discretion." Rhines , 544 U.S. at 277-79, 125 S.Ct. 1528. Accordingly, the Supreme Court clearly contemplated Rhines stays to be reviewed on direct appeal, rather than through a writ of mandamus.

Even so, the Court's analysis of this question is divorced from reality. I suggest if this court could review Rhines stays, the court might hold, for example, that "good cause" is akin to "cause" under procedural default. Or perhaps the court would hold that district courts' refusals to take state time and procedural bars into account in deciding whether a claim has potential merit does not comport with AEDPA or Rhines 's caution that stays be granted in only "limited circumstances." It would seem to me that if either of those very possible things happened, interlocutory review of Rhines stays would undoubtedly speed review over time, given district courts have issued multiple stays based on a lower standard of "good cause" and an understanding that the district court cannot consider time and procedural bars.

Congress and the Supreme Court have determined this piecemeal litigation, which is specifically caused by the total exhaustion requirement that renders Rhines stays necessary, is justified by comity. That is, state courts should have the chance to decide all issues before federal courts do. The Powell Committee questioned whether, in reality, we promote comity by allowing the state court to decide an issue before the federal court can. See Powell Comm. Report, supra page 1, at 22-23 ("Because of the existence of state procedural default rules, exhaustion is futile in the great majority of cases. It serves the state interest of comity in theory, but in practice it results in delay and undermines the state interest in the finality of its criminal convictions.").